1  MAUREEN E. MCCLAIN (State Bar No. 062050)
   Email: mcclain@kmm.com
2  CHARLES L. THOMPSON IV (State Bar No. 139927)
   Email: thompson@kmm.com
3  KAUFF MCCLAIN & MCGUIRE LLP
   One Post Street, Suite 2600
4  San Francisco, California 94104
   Telephone:   (415) 421-3111
5  Facsimile:   (415) 421-0938

6  Attorneys for Defendant
   CITY OF SANTA ROSA
7

8              UNITED STATES DISTRICT COURT

9              NORTHERN DISTRICT OF CALIFORNIA

10

11  JAMES A. MITCHEL,                    CASE NO.  C 08-02698 SI

12              Plaintiff,               **DECLARATION OF CAROLINE
                                         FOWLER IN SUPPORT OF
13  v.                                   DEFENDANT'S SPECIAL MOTION
                                         TO STRIKE PORTIONS OF
14  CITY OF SANTA ROSA, and DOES 1       PLAINTIFF'S COMPLAINT**
    through 50, inclusive,
15                                       DATE:      August 22, 2008
                Defendants.              TIME:      9:00 a.m.
16                                       DEPT:      Courtroom 10
                                         JUDGE:     Hon. Susan Illston
17
                                         COMPLAINT FILED: May 22, 2008
18                                       TRIAL DATE: No date set.

19

20          I, Caroline L. Fowler, declare:

21          1.    I have been employed since 2001 as an Assistant City Attorney for

22  the City of Santa Rosa ("City").  Effective July 22, 2008, I will assume the position of City

23  Attorney, taking over from my colleague Brien Farrell who is resigning from his position

24  as City Attorney.  I have represented the City in a wide variety of matters during my

25  employment here.  At present, one of my areas of representation is responding to

26  complaints raised by Attorney Toni Lisoni on behalf of a number of employees who work

27  at the Santa Rosa Police Department.  Those claims were first presented to the City in

28

KAUFF MCCLAIN &
MCGUIRE LLP
ONE POST STREET
SUITE 2600
SAN FRANCISCO, CA 94104

DECLARATION OF CAROLINE FOWLER IN SUPPORT OF              CASE NO. C 08-02698 SI
DEFENDANT'S SPECIAL MOTION TO STRIKE

1    December 2007 and January 2008. I have personal knowledge of the facts hereafter set

2    forth and could testify competently thereto if called as a witness in this matter.

3           2.    In late 2007, continuing into early 2008, two sworn and two unsworn

4    employees of the Police Department submitted a variety of complaints under the City's

5    anti-harassment policy which prevents discrimination and harassment on the basis of

6    protected classifications, establishes procedures for investigating such complaints and

7    promises that there shall be no retaliation against any employee for filing a valid

8    complaint or for bringing inappropriate conduct to the City's attention. Attached as

9    Exhibit 1 is a true and correct copy of the Anti-Harassment Policy (Policy No. 700-03

10   effective February 15, 2005; the anti-retaliation policy is B (3)). The complainants

11   asserted, among other contentions, that Captain James Mitchel had retaliated against

12   one or more of the complaining parties because they had supported other employees of

13   the Police Department raising concerns regarding gender discrimination.

14          3.    In January 2008, the City retained an individual with experience in

15   both city management and police department management to investigate the

16   complaints. That individual, Edward Kreins, spoke to many City (including Police

17   Department) employees. He provided a report concerning this investigation to the City

18   on or about March 13, 2008.

19          4.    From the inception of the complaints to present, I, together with

20   Brien Farrell, have engaged in discussions with the complainants' counsel, Toni Lisoni.

21   The goal of those discussions was to resolve the complainants' claims, and such

22   discussions have always been conducted pursuant to settlement protections arising

23   under California Evidence Code Sections 1152, 1154 and Federal Rule of Evidence 408.

24   Further, we have structured the settlement discussions as part of a mediation process.

25   As of March 14, 2008, we were committed to mediating complainants' claims before

26   Hon. Ellen James (Ret.) of JAMS in San Francisco. Initially, the mediation was to occur

27   on April 21, 2008, but has since been postponed to the June/July 2008 time frame to

28   allow the parties more time to prepare. The City has been informed by Ms. Lisoni that,

- 2 -

KAUFF MCCLAIN &
MCGUIRE LLP
ONE POST STREET
SUITE 2600
SAN FRANCISCO, CA 94104

DECLARATION OF CAROLINE FOWLER IN SUPPORT OF
DEFENDANT'S SPECIAL MOTION TO STRIKE

CASE NO. C 08-02698 SI

1  absent a resolution being reached, she will file suit raising claims under, inter alia, Title

2  VII of the 1964 Civil Rights Act.

3          5.      The initial investigation which Mr. Kreins conducted related

4  exclusively to personnel issues; namely, whether discrimination, harassment or

5  retaliation had occurred as alleged by the complainants.  The report was completed as of

6  March 13, 2008.  Ms. Lisoni had requested that she be provided a copy of the

7  investigation report and expressed that such was important in order to conduct a

8  meaningful mediation.  In my capacity as a legal representative of the City, I believed

9  that communication of the findings of the investigation to complainants and their counsel

10 was important to the process of attempting to resolve the complainants' allegations.  I did

11 not reach this decision unilaterally; I consulted with both the City Attorney, Brien Farrell,

12 and outside counsel regarding such determination.  Therefore, the City agreed to

13 provide copies of the investigation report to Ms. Lisoni and her clients on a confidential

14 basis as part of the settlement and mediation process.  Attached as Exhibit 2 is a true

15 and correct copy of the confidentiality agreement entered into by Ms. Lisoni on her part

16 and on the part of her clients as a basis for receiving the report.  Its use was confined to

17 settlement and mediation discussions, and all copies were to be returned at the end of

18 the process, with all parties preserving all legal positions if the report was requested in

19 discovery during any ensuing litigation which we believed would occur before a federal

20 court.

21         6.      On March 14, 2008, at about the time the report was distributed to

22 Captain Mitchel and another Police Department manager against whom the complaints

23 were made (as well as to lawyers for both Police Department managers), and following

24 the City's receipt of Exhibit 2 in signed form from Ms. Lisoni, I caused a copy of the

25 report (which is some 166 pages long, exclusive of exhibits) to be sent by federal

26 express to Ms. Lisoni's office and also provided at her request a copy of the report to

27 one of the complainants, Kathy Warr, who works for the Police Department in the

28 position of Technical Services Division Manager, a high level position which oversees

- 3 -

DECLARATION OF CAROLINE FOWLER IN SUPPORT OF
DEFENDANT'S SPECIAL MOTION TO STRIKE

CASE NO. C 08-02698 SI

1    dispatchers and other civilian employees of the Department.  She is a member of the

2    Police Department's Command Staff, and as such, routinely has access to confidential

3    information concerning Police Department issues.  Mitchel was present when I handed

4    the report to Warr; he made no objection.

5                 7.      During the afternoon of March 14, 2008, our outside counsel,

6    Maureen McClain, communicated with lawyers for Captain Mitchel (who was at that time

7    represented by Robert Aaronson) and for the other Police Department manager against

8    whom the complaints had been made.  I was advised that the lawyer for the other

9    manager disputed providing the investigation report to the complainants and their

10    counsel.  While maintaining the position that the provision was appropriate given the

11    confidential parameters in which it occurred, the City agreed to retrieve the report subject

12    to further discussion with all involved.  Attached as Exhibit 3 is a true and correct copy of

13    the e-mail sent by Ms. Lisoni to Brien Farrell on the afternoon of March 14, 2008

14    committing to returning the report and to her and Ms. Warr's refraining from reading the

15    report.  Both copies of the report were subsequently returned to me, and Ms. Lisoni has

16    assured the City that no further copies were retained by either Ms. Lisoni or Ms. Warr.

17                8.      Subsequent to Mr. Kreins' completion of the initial investigation, the

18    City asked him to conduct a follow up investigation concerning further conduct on

19    Captain Mitchel's part related to the initial investigation.  This supplemental report was

20    never provided to any of the complainants or to their counsel.  Following that subsequent

21    investigation, the City issued a Notice of Intent to Render Discipline to Captain Mitchel

22    dated April 7, 2008.  Such disciplinary notice was pending on the date that Captain

23    Mitchel filed the instant Lawsuit.  On May 30, 2008, the City terminated Captain Mitchel's

24    employment.  Captain Mitchel has requested arbitration of the discharge pursuant to the

25    City Charter.  Such arbitration will be a public proceeding in accordance with the

26    governing City Charter provision.

27                9.      During the pendency of the Notice of Intent to Render Discipline,

28    Captain Mitchel and/or his counsel on his behalf have extensively lobbied members of

KAUFF McCLAIN &
McGUIRE LLP
ONE POST STREET
SUITE 2600
SAN FRANCISCO, CA 94104

DECLARATION OF CAROLINE FOWLER IN SUPPORT OF
DEFENDANT'S SPECIAL MOTION TO STRIKE

1   the Police Department and others related to the Department (such as Associations

2   representing various groups of Department employees) to support him instead of the

3   complainants who were involved in bringing discrimination concerns to the attention of

4   the City.  Attached hereto as Exhibit 4 is a true and correct copy a letter received from

5   two such Associations.  There has also been a sale of T-shirts supportive of Captain

6   Mitchel to contribute to his legal fund.  Similarly, the Complaint Mitchel has filed, which

7   the City has since removed to federal court, details many aspects of the investigation,

8   including the identity of the complainants together with a description of their complaints.

9   See, for example ¶¶ 10, 12, 13, and 14 of Mitchel's 5/22/08 Complaint.  Attached as

10  Exhibit 5 is a true and correct copy of an article regarding this lawsuit which appeared in

11  the Santa Rosa Press Democrat on May 31, 2008.

12          I declare under penalty of perjury under the laws of the United States of

13  America that the foregoing is true and correct.

14          Executed this 9th day of June, 2008, at Santa Rosa, CA.

15

16                          CAROLINE L. FOWLER

17

18

19  4845-0428-0322.1

20

21

22

23

24

25

26

27

28

- 5 -

KAUFF McCLAIN &
McGUIRE LLP
ONE POST STREET
SUITE 2600
SAN FRANCISCO, CA 94104

# Exhibit 1

# ANTI-HARASSMENT

| HOME | VISITORS | RESIDENTS | BUSINESS | GOVERNMENT | DEPARTMENTS |

Search Santa Rosa

City of Santa Rosa \\ Departments \\ Human Resources \\ Policies \\ Anti-Harassment

POLICY NUMBER: 700-03
EFFECTIVE DATE: FEBRUARY 15, 2005

## A. PURPOSE:

This policy is adopted for the purpose of providing a harassment and discrimination free work environment for all City employees and for resolving disputes between City employees arising out of harassment in the work place.  This policy is not intended to create a right of action or entitlement to damages or any expansion of legal remedies now provided by either state or federal law.

## B. POLICY:

The City is committed to providing a work environment that is free of harassment and discrimination.  In keeping with this commitment, the City maintains a strict policy prohibiting all forms of unlawful harassment or discrimination,  including sexual harassment and harassment based on race; color; religion; national origin; age; gender; sexual orientation; gender identity, characteristics or expression; disability or any other characteristic protected by state or federal law. Any person who commits such a violation may be subject to personal liability as well as discipline by the City.

This policy applies to all employees and agents, including supervisors and non-supervisory employees.  This policy prohibits such discrimination or harassment of employees by vendors,

CITY OF
SANTA ROSA

independent contractors, and others doing business with the City.

## 1. Discrimination:

It is the City=s policy to employ, retain, promote, terminate, and otherwise treat all employees and job applicants on the basis of merit, qualifications and competence. This policy shall be applied without regard to any qualified individual=s race; color; religion; national origin; age; gender; sexual orientation; gender identity, characteristics or expression; disability or any other characteristic protected by state or federal law. This policy against discrimination applies to all phases of the employment relationship, including recruitment, testing, hiring, upgrading, promotion, demotion, transfer, layoff, termination, rates of pay, benefits and selection for training.

## 2. Harassment:

This policy prohibits unlawful harassment in any form based on race; color; religion; national origin; age; gender; sexual orientation; gender identity, characteristics or expression; disability or any other characteristic protected by state or federal law, including, but not limited to any of the following:

**Verbal Conduct,** such as epithets, derogatory jokes or comments, slurs or unwanted sexual advances, invitations or comments.

**Physical Conduct,** such as assault, blocking normal movement or interference with work activities.

**Visual Conduct,** such as derogatory or sexually oriented posters, cartoons, drawings or gestures.

**Use of Computers,** including the Internet and the e-mail system, to transmit, communicate or receive email or other information that is sexually-suggestive, pornographic or derogatory.

**Threats and Demands** to submit to sexual requests in order to keep your job or avoid some other loss, and offers of job benefits in return for sexual favors.

## 3. Retaliation:

No employee shall be retaliated against for filing a valid complaint, for assisting in an investigation of such complaints, bringing inappropriate conduct to the City=s attention, for preventing unlawful practices, or for participating in an investigation, proceeding, or hearing conducted by the Department of Fair Employment and Housing, the Fair Employment and Housing Commission, or the Equal Employment Opportunity Commission.

Any retaliation shall be immediately reported as set forth below.

## C. REPORTS OF VIOLATION OF POLICY:

Any employee who believes he or she has been harassed or discriminated against by a co-worker, supervisor or agent of the City of Santa Rosa should promptly report the facts of the incident or incidents and the names of the individuals involves to his or her supervisor, or in the alternative, to the Human Resources Department.  It is the responsibility of each employee to immediately report any violation or suspected violation of this policy to one or more of the individuals identified above.

Supervisors should immediately report any incidents of harassment or discrimination to the Human Resources Department.  The Human Resources Department will review all such claims and recommend appropriate corrective action, including disciplinary action when it is warranted.  Employees should feel free to report valid claims without fear of retaliation of any kind.

1. **Complaint Procedure:**

a. **Informal Complaint Procedure.**

Prompt, appropriate, direct action must be taken to stop incidents of harassment or discrimination. An employee is encouraged to tell the offending individual that the offensive behavior is unwelcome, offensive or inappropriate. If the offended employee is reluctant to make such a statement to the offending individual and/or the offending conduct continues, the offended employee shall inform a supervisor, manager, or the Human Resources Department of the incident or incidents. Supervisors shall immediately advise and consult with Human Resources Department when an informal complaint has been received. If the offended individual or alleged offending individual is not satisfied with the resolution of the matter, then a formal written complaint must be filed by one of them.

b. **Formal Complaint Procedure.**

Employees who file a formal written complaint shall follow the formal complaint procedure set out below:

(i) A formal written complaint shall be filed with the Director of Human Resources who shall then contact the appropriate department head. The department head and the Director of Human Resources shall then determine the scope of the investigation. Any corrective action taken shall be determined by the appropriate department head in consultation with the Director of Human Resources.

(ii) A formal written complaint shall be a signed account of what occurred, including a description of the incident(s) and the names of all persons who were present. The formal complaint shall be filed promptly but in no event later than one (1) year after the alleged incident.

(iii) If the formal complaint is against the Director of Human Resources, then it shall be filed with a Deputy City Manager who shall then determine the scope of the investigation.

(iv) If the formal complaint is against a department head, then the Director of Human Resources and the Deputy City Manager shall determine the scope of the investigation.

(v) When the Director of Human Resources and the department head (or in those cases where by necessity, the Deputy City Manager) have completed the investigation, they shall inform the offended individual and offending individual of the conclusion reached as a result of the investigation.

(vi) Any disciplinary action taken as a result of the investigation shall be in accordance with Personnel Rule 7.   Due to the privacy rights of the offending employee, the offended individual shall not be advised of the specific discipline imposed.

2.  **Right of Appeal**:

The findings of the investigation may be appealed to the City Manager by the offended individual by requesting a hearing before the City Manager.  A request for such hearing shall be made in writing to the Department of Human Resources within ten (10) working days from the date of the receipt of the decision.

The offending individual may appeal the findings to the City Manager in instances where he/she does not have a right to file a grievance under the Personnel Rules; otherwise, the offending individual shall file a grievance.

If you have any questions concerning this policy, please feel free to contact the Human Resources Department.

Modified by Resolution No: 26192

Dated: February 15, 2005

Modified by Resolution No: 20685

Dated: February 18, 1992

Adopted by Resolution No: 20424

Dated: July 2, 1991

Government Disclosure | Contact Us | FAQ | Press | Employment | Privacy Policy | Feedback



Weather data provided by weather.com®

This web page conforms to W3C's "Web Content Accessibility Guidelines 1.0" Level "A"
© Copyright 2004 - 2007 City of Santa Rosa, California. All Rights Reserved.

1/24/2008

# Exhibit 2

BRIEN J. FARRELL
City Attorney

MATTHEW J. LeBLANC
SUZANNE C. RAWLINGS
MICHAEL J. CASEY
CAROLINE L. FOWLER
MOLLY L. DILLON
VINCENT C. EWING
Assistant City Attorneys

BRUCE LEAVITT
Of Counsel

**CITY OF**
**SANTA ROSA**

OFFICE OF THE CITY ATTORNEY
100 Santa Rosa Avenue, Room 8
Santa Rosa, CA 95404
707-543-3040
Fax: 707-543-3055

March 14, 2008

**VIA FACSIMILE AND U.S.MAIL**

Toni Lisoni, Esq.
Law Offices of Toni Lisoni
1725 Canyon Run
Healdsburg, CA 95448

Re:    Santa Rosa Police Department Investigation

Dear Toni:

        As part of our continuing efforts to attempt pre-litigation resolution of the claims
raised by Ms. Warr, Ms. Holroyd, Lt. Zboralske, and Ms. Selivanoff (hereafter
"claimants" or "clients"), we have agreed that we will schedule one or more settlement
meeting(s) among the parties near the end of March 2008 (dependent upon when the
investigator's report is received) and a mediation thereafter, if the initial meeting(s) do
not resolve the matter. In light of this continuing settlement effort, the City agrees (and
confirms its agreement in this letter) to provide you with a copy of the investigator's final
report ("Report") promptly after it is received and reviewed by City management. We
have now received the report and would like to forward the report to you so that you have
it before our meeting on Tuesday. Please sign and fax this letter back and we can then
either Fed Ex it to you or you could pick it up at our office. It is 166 pages without
Exhibits so we would prefer not to fax the report to you.

        You agree to share the Report only with your clients named above who will in
turn be instructed to treat the report as strictly confidential. That means that neither you
nor any of your clients will distribute or discuss the Report outside of the context of
settlement meetings and mediation. You and your clients additionally agree that you will
not use the Report for any purpose other than settlement discussions, including
mediation. You will return the Report to me at the conclusion of the mediation
(regardless of outcome), and neither you nor your clients will retain any copy of the
Report.



Santa Rosa
★★★★★
All-America City

2007

Toni Lisoni, Esq.
March 14, 2008
Page 2

Nothing in this Agreement is intended to prejudice any party concerning the discoverability of the Report should the parties end their Stand-Still period and are thereafter in litigation. Each party's position regarding the production and or admissibility of the Report in litigation is fully preserved. We will mark the Report: "Confidential, to be used for Settlement and Mediation Purposes Only. Not to be Distributed".

If this letter accurately confirms our understanding, please sign and date a copy, and return that signed copy to me. Having this Agreement in place will facilitate the provision of the Report to you after it is received by the City.

Very truly yours,

CAROLINE L. FOWLER
Assistant City Attorney

CLF:kv

I have read the above letter and agree to its terms on behalf of the four claimants listed in the above letter.

Dated _3/14/08_

Toni Lisoni
Attorney for James Zboralako, Sophia
Selivanoff, Kathy Warr ; Erin Holroyd

# Exhibit 3

**From:** JSLT@aol.com [mailto:JSLT@aol.com]
**Sent:** Friday, March 14, 2008 04:57 PM
**To:** Farrell, Brien
**Subject:** Toni Lisoni

Brien,

Kathy Warr has picked up a copy of the Kreins investigation report for me from your office. As I have instructed and she has confirmed, she has not read it, and she will not read it. I will not read it either until I hear from you that it is okay to do so.

Thank you for your attention to this matter.

Toni Lisoni

It's Tax Time! Get tips, forms and advice on AOL Money & Finance.

4/11/2008

# Exhibit 4

To whom it may concern,

On May 6, 2008 the executive board members of the Santa Rosa Police Officer's Association (POA) and the Santa Rosa Police Management Association (PMA) met collectively. The purpose of this meeting was to discuss potential departmental issues related to the administrative action pending against Capt. Jamie Mitchel. Although Capt. Mitchel is not represented by either of our associations, the actions proposed against him will have an impact on the working conditions, morale, and wellness of the entire organization; including the members represented by our associations.

The specific facts in the administrative action pending against Captain Mitchel are not known to either association board. However, as association board members and employees of this organization, we are all aware of an ongoing divisiveness that has existed amongst command staff personnel within the police department for some time. Both the POA and PMA executive boards recognize that the issue of division amongst our command level staff has been prevalent for many years, even prior to Capt. Mitchel being employed. We also recognize that this is a problem in our organization that we have a strong interest in improving. The overall health and well being of the Santa Rosa Police Department is our ultimate goal. We do not believe that the removal of any one employee from our command staff will resolve or improve any functional problems that are present at the command level in the organization. Contrarily, we believe Capt. Mitchel's removal could exacerbate this problem.

The POA and PMA board members propose that the services of an outside organizational consultant or psychologist be retained to closely work with our command staff team over a sustained period of time (six months or more if necessary) to identify and resolve any dysfunctional issues. This intervention should include group, as well as individual, training and assistance to rebuild the working relationships within the command staff. This, in turn, will help our respective memberships regain confidence in the command staff. We strongly feel that our associations' respective memberships would support this type of a solution to a long standing problem within our organization. It is in our associations' interests to fix any issues within our command staff. We value quality leadership in our organization and believe that our members would support any efforts to make our existing command staff a more effective and cohesive team. We do not believe that the removal of Capt. Mitchel is the solution to any dysfunctional issues within our command staff. We believe the problems will continue if the entire command staff is not held accountable. Both our executive boards would be willing to address our members and summon support in the above proposed resolution to these issues. Please contact either of our executive board presidents should you have any questions or desire any discussion.

Ken Johnson
SRPOA President

Steve Fraga
SRPMA President

# Exhibit 5

○ WITH PHOTO
○ NO PHOTO
○ DIGG
○ FACEBOOK
○    Yahoo! Buzz
○ YAHOO
○ NEWSVINE
○ DEL.ICIO.US

# SRPD's No. 2 fired amid staff complaints

## Capt. Mitchel sues, claiming city conspired to unlawfully dismiss him over 'unfounded' criticism

By L. A. CARTER
THE PRESS DEMOCRAT

Published: Saturday, May 31, 2008 at 4:30 a.m.
Last Modified: Saturday, May 31, 2008 at 5:20 a.m.

A series of discrimination complaints targeting the top brass at the Santa Rosa Police Department has led to the firing of the second-in-command, who is fighting back with a lawsuit against the city claiming his rights were violated.

The events have exposed deep rifts within the Police Department, with some factions expressing dissatisfaction with management styles under Police Chief Ed Flint.

Capt. Jamie Mitchel, 53, the commander of the patrol division, was placed on administrative leave with pay in March and has since cleared out his office. He met with city officials last week in a disciplinary hearing to determine his future and was informed Friday evening that he has been terminated, according to sources close to Mitchel.

Amid the turmoil, the city has created an in-house "chief's advisory board" to help solve internal distress in the department. The city has also hired a consulting firm to advise the chief and other department managers on improving supervisory skills.

According to Mitchel's suit, all of the complaints from employees -- including assertions of unequal treatment of women and discriminatory conduct based on sexual orientation -- also name Flint, who apparently hasn't faced disciplinary proceedings.

Santa Rosa City Manager Jeff Kolin confirmed the city had decided to fire Mitchel following the disciplinary hearing. He declined to discuss the details of the hearing, calling it a personnel matter.

The chief was out of town Friday and didn't return phone calls to his office seeking comment.

Employee complaints lodged with the city in the past year reflect a climate of discontent among Police Department employees, particularly at the management level. Several people in the department have said the dissatisfaction focuses primarily on the perception of unequal treatment of people and arbitrary management styles.

"The Police Department is not a happy place," said one source from within the department. "People want to know what's happening, and the chief is not addressing them."

Several police and city sources said the department is marked by divided camps that support either Mitchel or the other captain on the force, Tom Schwedhelm, a veteran of the department whose name has surfaced as a possible candidate to be the next police chief.

Some members of the department have been seen wearing custom T-shirts that read "Stand your ground" or "The Jamie Mitchel legal defense fund."

Flint was hired in 2004 and his contract expires in January 2009. He was paid $189,398 in 2007. Mitchel was paid $151,956.

Schwedhelm declined to comment Friday about the complaints or any troubles within the department.

Vice Mayor John Sawyer said council members were apprised of the situation last week, but he refused to elaborate. "It's a personnel issue," he said.

According to Mitchel's lawsuit, at least four formal employee complaints were filed between January 2007 and February of this year, all naming Flint. At least two of the complaints also named Mitchel.

The complaints:

A gender disparity claim filed by a female officer, Erin Holroyd.

An allegation that Flint engaged in retaliation, filed by Sophia Selivanoff, a female personnel supervisor who said she wasn't promoted because of her support of Holroyd's complaint.

A claim of discrimination, hostile work environment and retaliation by Flint and Mitchel, filed by James Zboralske, a lieutenant and onetime supervisor of Holroyd who said he was singled out because of his sexual orientation.

A claim of gender discrimination, hostile work environment and retaliation filed against Flint and Mitchel by Kathy Warr, a police technical services department manager.

Mitchel's lawsuit, filed last week in Sonoma County Superior Court, claims that the city -- specifically City Manager Jeff Kolin and incoming City Attorney Caroline Fowler -- conspired to unlawfully terminate him to satisfy "unfounded complaints" of employees "who claim to be in a protected class."

A former Beverly Hills police chief conducted an investigation into the complaints, Mitchel's suit and other sources said. The results of the investigation and the specifics of the complaints are confidential.

The suit alleges Fowler committed a misdemeanor by releasing the results of the investigation to those who filed the complaints. It says such a release violates a city ordinance and state law and infringes on his constitutional privacy rights.

Fowler didn't return calls Friday seeking comment. Outgoing City Attorney Brien Farrell said the city has acted in a legal and appropriate manner. He said the city has moved the case to federal court because of the allegations of constitutional issues and soon will move for dismissal.

The suit seeks unspecified monetary damages for Mitchel's economic losses, infliction of emotional distress and punitive damages against the city.

Mitchel claims city officials engaged in a conspiracy to "wrongfully terminate (his) employment . . . for the sole purpose of appeasing a small group of people who have made unfounded complaints out of concern for SRPD dysfunction that existed" before Mitchel was hired.

The suit also claims that Mitchel was subjected to gender discrimination. It says Mitchel, a white, heterosexual male, is being disciplined as a conciliatory gesture to those who alleged discrimination based on their gender or sexual orientation.

Farrell scoffed at that contention. "That's indicative of the merits of this case," he said.

Kolin declined to comment on the complaints, citing confidentiality of personnel matters.

He said there has been no "management review of the Police Department" and "no review of police practices" in the wake of the complaints.

He acknowledged creating a "chief's advisory board" of police department employees to help resolve issues within police department management and the hiring of a Santa Rosa consulting firm to help with "training, organizational development and facilitation."

The city manager said the consultant "will work with the chief and the command staff, including sworn and non-sworn personnel."

Ken Johnson, head of the Police Officers Association, the union that represents line officers, said his association and the Police Management Association sent a joint letter to the city asking for help solving the department's management conflicts.

"It's not so much a letter in support of Capt. Mitchel, it's that both boards agreed to send it to the city asking them to intervene and resolve any issues in management, instead of terminating one person and thinking this is going to solve any problems there are," he said.

"Personally, I don't think terminating Capt. Mitchel is going to resolve any problems in the department. He's got a lot of support in our department, especially for the short time he's been here."

Flint was a 26-year veteran of the Sacramento County Sheriff's Department with a history of military service in the Army, National Guard and Army Reserves when he was hired in 2004 to take over for former Chief Mike Dunbaugh.

Flint hired Mitchel in 2005 when Mitchel retired from Sacramento County after 27 years there. In his lawsuit, Mitchel says he has been a law enforcement officer since 1976, with no history of discipline.

Mitchel was recently commended by the Sonoma County Latino Peace Officers Association for his commitment to the community. Mitchel is a member of the Latino officers group.

Mitchel said he was brought in to fix dysfunction left over from Dunbaugh's era.

Staff writer Mike McCoy contributed to this report. Staff writer L.A. Carter can be reached at 568-5312 or lori.carter@pressdemocrat.com.

- .
- .
- .
- Enlarge Text
- Email
- Print
- Share

  o Your Name
  o Your Email
  o Recipient's Email
  o [ Send ]

  o WITH PHOTO
  o NO PHOTO
  o DIGG
  o FACEBOOK
  o    Yahoo! Buzz
  o YAHOO
  o NEWSVINE
  o DEL.ICIO.US

**DIRECTV Official Site**
Limited Time DIRECTV offer. Get 150 ch pkg for $29.99/mo (1yr).
www.directv.com

**Get Digital Satellite TV**
3 Months Free & Free DVR Upgrade. From $19.99/mth. Order DISH TV
www.DishNetwork.us

**Satellite Dish Advantage**
No Hidden Fees for Your Satellite Internet - DSL - TV - Phone
satellitedishadvan

Ads by Yahoo!

**COMMENTS**

Post a comment | View all comments on this topic.

1.  wiseokieson says...
    May 31, 2008 7:40:43 am

    RE: http://www.pressdemocrat.com/article/20080531/NEWS/805310355